People v Harris (2025 NY Slip Op 51550(U))

[*1]

People v Harris

2025 NY Slip Op 51550(U)

Decided on October 1, 2025

Supreme Court, Bronx County

Stone, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 1, 2025
Supreme Court, Bronx County

The People of the State of New York

against
Tony Harris, Defendant.

Ind. No. 72902-24

ADA Peter Kreatsoulas, Office of the Bronx County District Attorney, for the People.
Falon Rainer, Esq, The Bronx Defenders, for the Defendant.

Audrey E. Stone, J.

In a supplemental motion dated August 6, 2025, the defendant raises a Second Amendment challenge to the firearm-related offenses charged under Counts 7 through 14 of the indictment. The challenge raised in this supplemental motion differs from a prior Second Amendment challenge raised by the defendant in that it focuses on the defendant's automatic disqualification from firearm licensure because of his 1992 conviction for the violent felony offense of robbery in the first degree (see Penal Law 160.15[1]). For the following reasons, the Court denies the motion in its entirety.
 Background
The allegations in this case arose on June 17, 2024, when the defendant's former intimate partner called 911 and reported that the defendant had strangled her. She also stated that the defendant had guns and drugs in the home. The police responded to the residence and posed a series of questions to assess the complainant's physical safety. One of the questions concerned the defendant's access to firearms and the complainant reiterated that the defendant had access to a firearm. Based on this information, police obtained a search warrant for the apartment and recovered two loaded firearms behind the defendant's bed board, quantities of ammunition, and 63 vials of crack cocaine. Upon his arrest, the defendant stated to the police in sum and substance that the Bronx is a dangerous place, that he had owned the weapons for years, and that he "didn't want them to kill me." 
Following his arrest, the defendant was released with an Electronic Monitor supervised by the New York City Sherriff. As an additional condition of release, a temporary order of protection was issued on behalf of the complainant. A term of this order prohibited the defendant from possessing any firearms and ordered the defendant to surrender all weapons immediately to the local precinct. With this order in place and while under supervision with Electronic Monitoring, the defendant was rearrested for murder and criminal possession of a weapon in the shooting death of an individual outside of a bodega. The defendant now stands charged with inter alia, Murder in the Second Degree, under Indictment 70798-25.
Prior to these indictments, the defendant's last criminal conviction had been in 2012 for a misdemeanor crime of menacing. In total, the defendant has twenty-two prior misdemeanor convictions and one prior violent felony in 1992 for robbery in the first degree, a Class B violent felony offense (Penal Law § 160.15[1]). The defendant received a Certificate of Relief from Civil Disabilities ("Certificate of Relief") in 2015 which restored many of his civil privileges relating to this felony conviction. The Certificate of Relief removed "all legal bars and disabilities to employment, license and privilege except for those pertaining to firearms under sections 265.01(4) and 400.00 of the Penal Law and the right to be eligible for public office" (emphasis added). Correction Law § 701(2) required this limitation of the defendant's Certificate of Relief, since it prohibits people convicted of violent and Class A-I felonies from restoring their ability to apply for a firearm license. 
The defendant argues that but for his prior felony conviction, he would have met all the eligibility criteria for licensure. Upon defense counsel's information and belief, in 1994 the defendant obtained a welder's license; he supported his family as a welder; and remains a member of good standing in his union. Defendant's motion provided no documentary evidence of employment, either past or present, or union membership. Relating to the other potential bars for licensure, the defense avers that none apply, including that the defendant is not "an unlawful user of or addicted to any controlled substances" as defined under 21 USC § 802. 

Analysis
The First Department has held that a defendant who does not submit to New York State's licensing regime, and is then charged criminally for unlicensed firearm possession, lacks standing to bring a Second Amendment challenge (see People v Martinez, 238 AD3d 423, 423-24 [1st Dept 2025]; People v Watts, 234 AD3d 620, 621 [1st Dept 2025], lv denied, 43 NY3d 1059 [2025]). An exception to this standing rule exists when a defendant demonstrates that submission of a licensing application would have been futile (see People v Tarazona, 239 AD3D 544, 545 [1st Dept 2025] [futility exception applied where defendant did not meet the statutory age requirement for licensure]; see also People v Velardo, 228 AD3d 520, 520-521 [1st Dept 2024], lv denied 42 NY3d 930 [2024]; People v Archibald, 225 AD3d 548, 548-549 [1st Dept 2024], lv denied 41 NY3d 1016 [2024]; United States v Decastro, 682 F3d 160, 164 [2d Cir 2012], cert denied 568 US 1092 [2013]; Plummer v United States, 983 A.D2d 323 (DC App 2009). Regardless of defendant's argument that he would have been deemed by a licensing officer as "having the essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others" (Penal Law § 400.00[1][b]), his prior violent felony conviction automatically disqualified him. Therefore, the Court finds the futility exception applies and will address the merits of the defendant's challenge. 
The defendant's challenge focuses on his claim that he possessed the firearms in question for self-defense, a recognized right under the Second Amendment. Inarguably, the Second Amendment confers on individuals the right to bear arms (District of Columbia v Heller, 554 US 570, 628-629 [2008]). Yet, the Supreme Court went on to say in Heller that such rights were not unlimited and that its decision did not "cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill" (id. at 626). Based on Heller, the First Department in People v Johnson (111 AD3d 469, 470 [1st Dept 2013], lv denied 22 NY3d 1157 [2014]), held that New York law prohibiting licensure based on felony conviction was constitutional. 
In essence, the defense argues that the Supreme Court's decision in New York State Rifle & Pistol Ass'n v Bruen (597 US 1, 11 [2022]), upends Heller and by extension Johnson. Bruen abrogated the means-end scrutiny test that lower courts had used to evaluate Second Amendment challenges, and set out, instead, a two-step analysis based on text and history for courts to adopt (id. at 24). First, a court must determine whether the Second Amendment's "plain text covers an individual's conduct" (id.). If it does, the conduct is presumptively protected by the United States Constitution (id.). Under the second step of analysis, the Government must "justify its regulation by demonstration that it is consistent with the Nation's historical tradition of firearm regulation" (id.). The Supreme Court emphasized that this test, unlike means-end scrutiny, aligned with the textual and historical analysis that the Supreme Court had employed in Heller (id.). Since Johnson was based on Heller and not means-end scrutiny, the Court finds that Johnson remains binding precedent. 
This conclusion is further supported by the Second Circuit's recent decision in Zherka v Bondi (140 F 4th 68 [2d Cir 2025]). In United States v Bogle (717 F3d 281 [Mem] [2d Cir 2013]), the Second Circuit upheld the facial constitutionality of 18 USC § 922[g][1]) that federally prohibits firearm possession by felons. Post-Bruen, in Zherka, the Second Circuit reinforced that Bogle remained good law (Zherka, 140 F 4th at 74-75). Like Johnson, Bogle was based not on means-end scrutiny, but on the Supreme Court's statement in Heller, that historical antecedent supports prohibitions on felons possessing firearms (717 F3d at 281-282). The Second Circuit also noted that several other federal circuit courts had held, on that same basis, that their pre-Bruen precedent finding 18 § USC 922(g)(1) constitutional remained good law (Zherka, 140 F4th at 75 [collecting cases]).
The defendant's further arguments that the nature of his disqualifying felony conviction, his receipt of a Certificate of Relief, and his lack of recent criminal history provide additional bases for dismissal do not change the Court's analysis. The defendant's citation to case law addressing disarmament of people convicted of non-violent felonies (see United States v Duarte, 137 F4th 743 [9th Cir 2025]; Range v Attorney Gen. United States, 124 F4th 218 [3d Cir 2024]; Kanter v Barr, 919 F3d 437, 455 [7th Cir 2019] [Barrett, J., dissenting]) does not apply here where the defendant stands convicted of the Class B violent felony offense of robbery in the first degree. Notably, New York's legislature considered and rejected removing the firearm restrictions to individuals convicted of A-I felonies and violent felonies through Certificates of Relief (see NY Spons. Memo, 2007 AB 463). According to the legislative history, the sponsors had the specific concern that possession of firearms by this class posed a perceived danger to the community. As noted, supra, this type of regulation by the legislature conforms with the longstanding historical analogues of limiting felons in possession. Furthermore, New York law provides a path to licensure for people convicted of non-violent felonies, since someone so situated may seek a Certificate of Relief that restores the right to apply for a firearm license (see e.g. Matter of Hecht v Bivona, 306 AD2d 410, 411 [2d Dept 2003]; see also Correction Law § 701[2]). 
For all these reasons, the Court denies the defendant's motion to dismiss.
This constitutes the decision and order of the Court.
Dated: October 1, 2025
Bronx, New York
Audrey E. Stone, A.J.S.C.